UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | | |
|---|---|---|
| JOE HAND PROMOTIONS, INC., | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CAUSE NO. 2:15-CV-93-JEM |
| | ) | |
| ROBERT J. MATIJEVICH, individually | ) | |
| and d/b/a L.F. NORTONS, and UDL, LLC, | ) | |
| d/b/a L.F. NORTONS. | ) | |
| Defendants. | ) | |

**OPINION AND ORDER**

This matter is before the Court on Plaintiff's Motion for Summary Judgment [DE 24], filed by Plaintiff on July 25, 2016, and on Defendants' Cross Motion for Summary Judgment [DE 26], filed on August 1, 2016.[1] Plaintiff filed a response to Defendants' Cross Motion for Summary Judgment on August 17, 2016. The parties did not file any other responses or replies, and the time to do so has passed.

### I.     Procedural Background

Plaintiff filed its Complaint on March 11, 2015, alleging that Defendants unlawfully published a TV program to which Plaintiff had exclusive commercial distribution rights. On July 8, 2016, by written consent of the parties, this case was reassigned to the undersigned United States Magistrate Judge to conduct all further proceedings and to order the entry of a final judgment in this case. Therefore, this Court has jurisdiction to decide this case pursuant to 28 U.S.C. § 636(c).

---

[1] Defendants filed their Cross Motion for Summary Judgment 7 days after the dispositive motions deadline. Consequently, Plaintiff encourages the Court to treat the Cross Motion as a response and to automatically deny any request that judgment be entered in Defendants' favor. However, Plaintiff had notice of the arguments raised in Defendants' Cross Motion and ample time to respond – and did, in fact, respond. *See* Fed. R. Civ. P. 56(f). Accordingly, in the interests of justice and judicial economy, the Court considers whether judgment in Defendants' favor is appropriate.

## II. Summary Judgment Standard

` The Federal Rules of Civil Procedure mandate that motions for summary judgment be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Rule 56 further requires the entry of summary judgment, after adequate time for discovery, against a party "who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (citing Fed. R. Civ. P. 56(c)). "[S]ummary judgment is appropriate – in fact, is mandated – where there are no disputed issues of material fact and the movant must prevail as a matter of law. In other words, the record must reveal that no reasonable jury could find for the non-moving party." *Dempsey v. Atchison, Topeka, & Santa Fe Ry. Co.*, 16 F.3d 832, 836 (7th Cir. 1994) (citations and quotations omitted). To demonstrate a genuine issue of fact, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts," but must "come forward with 'specific facts showing that there is a *genuine issue for trial*.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986) (quoting Fed. R. Civ. P. 56(e)).

In viewing the facts presented on a motion for summary judgment, a court must construe all facts in a light most favorable to the non-moving party and draw all legitimate inferences in favor of that party. *See Anderson v. Liberty Lobby*, 477 U.S. 242, 255 (1986); *Srail v. Vill. of Lisle*, 588 F.3d 940, 948 (7th Cir. 2009); *NLFC, Inc. v. Devcom Mid-Am., Inc.*, 45 F.3d 231, 234 (7th Cir. 1995). A court's role is not to evaluate the weight of the evidence, to judge the credibility of witnesses, or to determine the truth of the matter, but instead to determine whether there is a genuine issue of triable fact. *See Liberty Lobby*, 477 U.S. at 249-50.

**III. Facts**

The parties do not dispute the following facts. Plaintiff owned the exclusive commercial distribution rights to a TV broadcast of *Ultimate Fighting Championship 158: Georges St. Pierre v. Nick Diaz*, a series of mixed-martial-arts fights on March 16, 2013. Plaintiff sold licenses to various commercial establishments, such as bars and restaurants, so that they could show *UFC 158* publically.

Defendant UDL, LLC, and its officer, Defendant Robert J. Matijevich, own and operate L.F. Nortons, a bar in Lake Station, Indiana. On March 16, 2013, Peter Skoubas, an L.F. Nortons patron, brought his personal DIRECTV satellite box into the bar and asked that it be hooked up to the bar's TVs. Mr. Skoubas had paid to watch *UFC 158* on pay-per-view through his DIRECTV box. Bar staff plugged the box into the LF Nortons TV system, and at least one TV displayed *UFC 158* while several people were in the bar. None of Defendants nor Mr. Skoubas purchased a license from Plaintiff to show *UFC 158* in a commercial setting.

**IV. Analysis**

For Defendants' showing of *UFC 158*, Plaintiff asserts three claims: violation of 47 U.S.C. § 605 (unauthorized publication or use of communications), violation of § 47 U.S.C. 553 (unauthorized reception of cable service), and conversion. Plaintiff did not move for summary judgment on the conversion claim, so the Court likewise does not address that claim.

 A. <u>Sections 605 & 553</u>

Sections 605 and 553 independently criminalize unlawful interceptions of cable programming. Both sections provide a civil right of action to any "person aggrieved by" the unlawful interceptions. 47 U.S.C. §§ 605(e)(3), 553(c).

A threshold question, though, is whether Plaintiff may pursue relief under both sections. Plaintiff argues that there is a "split of authority among the district courts as to whether an interception may violate both 47 U.S.C. § 605 and 47 U.S.C. § 553." Def. Mot. at 5 [DE 25]. However, "Congress intended for § 605 to apply to the unlawful interception of cable programming transmitted through the air, while it intended for § 553 to apply to the unlawful interception of cable programming while it is actually being transmitted over a cable system." *United States v. Norris*, 88 F.3d 462, 469 (7th Cir. 1996).

Whether Defendants are liable under either § 605 or § 553, then, depends on how *UFC 158* was transmitted – through the air or by cable. Although the parties provide no argument one way or the other, Mr. Skoubas's affidavit says that he purchased the pay-per-view rights to *UFC 158* "through [his] satellite provider Direct TV" and that he took his "satellite box with [him] to LF Nortons" on March 16 to watch the fights. Defendants do not dispute these facts. Accordingly, § 605 (protecting "over-the-air" communications) governs this case, not § 553 (protecting cable communications). *Miller*, 88 F.3d at 468-69.

Section 605(a) provides, in relevant part:

> No person receiving, assisting in receiving, transmitting, or assisting in transmitting, any interstate or foreign communication by wire or radio shall divulge or publish the existence, contents, substance, purport, effect, or meaning thereof, except through authorized channels of transmission or reception . . . . No person not being authorized by the sender shall intercept any radio communication and divulge or publish the existence, contents, substance, purport, effect, or meaning of such intercepted communication to any person. No person not being entitled thereto shall receive or assist in receiving any interstate or foreign communication by radio and use such communication (or any information therein contained) for his own benefit or the benefit of another not entitled thereto. No person having received any intercepted radio communication or having become acquainted with the contents, substance, purport, effect, or

4

> meaning of such communication (or any part thereof) knowing that such communication was intercepted, shall divulge or publish the existence, contents, substance, purport, effect, or meaning of such communication (or any part thereof) or use such communication (or any information contained therein) for his own benefit or for the benefit of another not entitled thereto.

For this case's purposes, then, § 605 is "generally interpreted to prohibit commercial establishments from intercepting and broadcasting satellite and cable television programming." *J & J Sports Prods., Inc. v. Perez*, No. 12-C-8256, 2014 WL 3805818, at *2 (N.D. Ill. Aug. 1, 2014) (citing *United States v. Norris*, 88 F.3d 462 (7th Cir. 1996)).

Defendants raise two related arguments against § 605 liability. Defendants argue that showing *UFC 158* in the bar was an "authorized" publishing and outside § 605's scope because Mr. Skoubas paid to legally watch the fights on his DIRECTV box. Defendants also argue that they did not unlawfully "intercept" the *UFC 158* broadcast as that term is used in § 605. This argument, too, relies on Mr. Skoubas's payment to watch *UFC 158* on his personal DIRECTV box.

The first sentence of § 605 prohibits "receiving" or "assisting in receiving" a protected communication, and prohibits publishing the communication "except through *authorized* channels of transmission of reception." *See also Nat'l Satellite Sports, Inc. v. Eliadis, Inc.*, 235 F.3d 900, 915-17 (6th Cir. 2001). As several other courts have found, "where a programming was obtained through a residential account and then divulged in a commercial setting . . . a violation of § 605 occurred regardless of the defendant's intent or knowledge." *DirectTV v. Spina*, No. 1:15-CV-104, 2016 U.S. Dist. LEXIS 116235, at *58-59 (S.D. Ind. Aug. 30, 2016) (collecting cases).

At the very least, Defendants assisted Mr. Skoubas in receiving *UFC 158* and published it through their TV system, and Plaintiff did not authorize that use. *See id.* That Mr. Skoubas contracted with DIRECTV for *personal* use of the *UFC 158* broadcast does not mean he was

5

authorized to publish *UFC 158* in a *commercial* setting – only Plaintiff could license out that right, and it did not in this case. *See id.* at \*46 ("Under sentence one of § 605, a plaintiff need not show that the defendant was not authorized to receive the transmission, but need only show that the divulgence of the transmission was unauthorized.") (citations omitted).

Accordingly, summary judgment in Plaintiff's favor on its § 605 claim is appropriate. *See* 47 U.S.C. § 605(a); *Spina*, 2016 U.S. Dist. LEXIS 116235, at \*59. Furthermore, because Plaintiff cannot simultaneously pursue its claims under § 553, as discussed above, summary judgment in Defendants' favor on that claim is appropriate.

B.     Individual Liability

Defendants contend that Defendant Matijevich cannot be held individually liable in this case. Defendant Matijevich was the registered agent for Defendant UDL, LLC, and was the "president of UDL as the owner of LF Nortons" when *UFC* 158 was shown in the bar. Matijevich Affidavit at 4-5 [DE 6].

The United States Court of Appeals for the Seventh Circuit "has not adopted a specific test" for determining individual liability under § 605. *J&J Sports Prods. v. La Pica #3 LLC*, No. 15-CV-590-JPS, 2016 U.S. Dist. LEXIS 47274, at \*7 (E.D. Wis. April 7, 2016). However, to assess individual liability under § 605, many courts follow – and the parties urge this Court to follow – a copyright test for vicarious liability as approved by the United States Court of Appeals for the Second Circuit in *Softel, Inc. v. Dragon Medical & Scientific Communications*, 118 F.3d 955, 971 (2d Cir. 1997). *See La Pica #3*, 2016 U.S. Dist. LEXIS 47274, at \*7 (collecting cases). Under the *Softel* test, an individual may be liable where the individual "(1) has a right and ability to supervise violations; and (2) possesses an obvious and direct financial interest in the misconduct." *La Pica #3*,

6

2016 U.S. Dist. LEXIS 47274, at * 7.

Plaintiff cites multiple district court cases for the proposition that *any* company owner or officer – by the simple fact that they are an owner or officer – has the quality of control and the financial interest necessary for individual liability. *See, e.g.*, *Zuffa v. Trappey*, No. 11-0006, 2012 U.S. Dist. LEXIS 39375, at *13-14 (W.D. La. March 22, 2012) ("By admitting that they are 'officers, directors, shareholders, and/or principals' of the Fieldhouse, Trappey and Babineaux concede the requisite control and financial interest necessary to establish their vicarious liability for the Fieldhouse's showing of the Broadcast."); *see also Joe Hand Promotions, Inc. v. Rizzi*, No. 12-2526, 2013 U.S. Dist. LEXIS 170163, *12 (W.D. Tenn. Dec. 3, 2013); *DIRECTV, Inc. v. Cibulka*, No. 1:11-CV-231, 2011 U.S. Dist. LEXIS 83437, at *4 (M.D. Pa. July 29, 2011).

These check-a-box holdings, though, are inconsistent with the *Softel* test. In fact, the *Softel* court came to the opposite conclusion about individual liability on similar facts, holding that an individual defendant's status as president of a company and a shareholder of that company at the time of the infringing conduct was insufficient to warrant individual liability. *Softel*, 118 F.3d at 971-72. The *Softel* court wrote:

> The only evidence that Softel adduced prior to the [lower] court's ruling relating to the issue of Hodge's supervisory capacities and financial interests was that Hodge was the president of Dragon and a shareholder. The evidence is too attenuated to establish a sufficiently "direct" financial interest in the exploitation of the copyrighted materials.

*Id.*

The agreed facts in this case similarly do not establish a "direct" financial connection between Defendant Matijevich's ownership interest and showing *UFC 158* in LF Nortons. Furthermore, Defendant Matijevich was not present when Mr. Skoubas brought his DIRECTV box

7

into LF Nortons, and he did not know that Mr. Skoubas was doing so. More importantly, Plaintiff does not contest Defendant Matijevich's affidavit that says he was "not directly involved in the day to day activities of LF Nortons." Affidavit of Def. at 1 [DE 26-6].

Plaintiff argues, "Since Matijevich possessed the ownership interest in the Defendant establishment, he had the right and ability to supervise and a financial interest and individual liability is appropriate." Def. Resp. at 8 [DE 28]. While an "individual defendant who has the right and ability to supervise the violations and a strong financial interest in the activity may be liable under" § 605, "in order to show individual liability, allegations of ownership of the establishment, without more, are insufficient." *Joe Hand Promotions, Inc. v. Sharp*, 885 F. Supp. 2d 953, 957 (D. Minn. 2012) (quoting *J&J Sports Prods., Inc. v. Santillan*, No. 1:11-cv-1141, 2012 WL 2861378, at *2 (M.D.N.C. July 11, 2012)).

The undisputed facts show that Defendant Matijevich did not have a sufficiently direct financial interest in the showing of *UFC 158* or the supervisory capacity necessary to warrant individual liability. Accordingly, Defendant Matijevich cannot be held individually liable for Plaintiff's § 605 claim and summary judgment in his favor is appropriate. *See Celotex*, 477 U.S. at 322 (1986) (citing Fed. R. Civ. P. 56(c)).

### C. Damages

Because Defendants did not address the issue of damages in their brief, the Court orders them to brief that issue, as discussed below, and grants time for Plaintiff to reply.

## V. Conclusion

Consistent with the foregoing discussion, the Court hereby **GRANTS in part and DENIES**

**in part** Plaintiff's Motion for Summary Judgment [DE 24]. The Court **DIRECTS** the Clerk of Court to enter judgment in Plaintiff's favor on its § 605 claim against Defendant UDL, LLC.

The Court also **GRANTS in part and DENIES in part** Defendants' Cross-Motion for Summary Judgment [DE 26]. The Court **DIRECTS** the Clerk of Court to enter judgment in Defendant Matijevich's favor on all Plaintiff's claims. The Court also **DIRECTS** the Clerk of Court to enter judgment in Defendant UDL, LLC's favor on Plaintiff's § 553 claim.

The Court **ORDERS** counsel for Defendants to file a brief concerning the appropriate amount of damages in this case, including any attorney fees he or opposing counsel may be entitled to, on or before **April 5, 2017**. The Court also **ORDERS** counsel for Plaintiff to file a reply, if any, by **April 19, 2017**.

SO ORDERED this 22nd day of March, 2017.

                                        s/ John E. Martin
                                        MAGISTRATE JUDGE JOHN E. MARTIN
                                        UNITED STATES DISTRICT COURT

cc:    All counsel of record